**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DANIELLE TILLERY, on behalf of himself and those similarly situated,

Plaintiff,

v.

MIRENESSE COSMETICS,

Defendant.

Case No. 3:19-cv-08106

**CLASS ACTION COMPLAINT**

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

**DEMAND FOR JURY TRIAL**

## NATURE OF THE CASE

1. Plaintiff Danielle Tillery ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the illegal actions of Mirenesse Cosmetics ("Mirenesse" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") Plaintiff alleges as follows upon personal knowledge as to herself and her own experiences and, as to all other matters, upon information and belief including due investigation conducted by her attorneys.

2. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3. As detailed herein, Mirenesse bombarded consumers' phones with marketing text messages using an automatic telephone dialing system ("ATDS"). Mirenesse violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an ATDS to deliver non-emergency advertising and marketing text messages to telephone numbers assigned to a cellular telephone service without prior express written consent.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

5. This Court has personal jurisdiction over Mirenesse, which engaged in a nationwide telemarketing campaign, including in this District. Specifically, Plaintiff received the text messages sent by Mirenesse that form the basis of her claims within this District.

6. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the

events alleged herein occurred within this District. Specifically, Plaintiff received the text messages sent by Mirenesse that form the basis of Plaintiff's claims within this District.

**PARTIES**

7. Plaintiff is an individual who, at all relevant times, resided in San Francisco, California.

8. Defendant Mirenesse Cosmetics is a privately owned Australian company with its principal place of business in Melbourne, Australia in the Australian state of Victoria.

9. Mirenesse is Australia's number one Online Beauty Brand with annual revenue of approximately $100 million. Mirenesse sells its products in Australia, Europe, Asia and throughout the United States. Mirenesse sells its products in the United States through its own website as well as other on-line sites such as amazon.com, and through retail stores such as Nordstrom. As evidence of Defendant's targeting of the United States market, on its website it provides information on shipping to the United States and announces that it "ships worldwide."[1]

**TCPA BACKGROUND**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

---

[1] https://mirenesse.zendesk.com/hc/en-us/articles/360017906332-How-long-does-shipping-take-to-the-U-S-UK-or-Europe-Everywhere-outside-of-Australia- (last visited November 24, 2019).

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

12. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. at §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

13. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

14. The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

15. Text messages are considered "calls" for the purposes of the TCPA, and are, therefore, subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

16. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

17. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

18. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; "[c]onsent is an affirmative defense to liability under the TCPA." *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (finding Defendant "did not show a single instance where express consent was given before the call was placed.")

19. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

20. Mirenesse is a cosmetics company that markets and sells products all over the world, including in the United States. Mirenesse markets and sells its products nationwide

through internet sales, on its own website as well as through amazon.com, and in retail stores including Nordstroms. *See www.mirenesse.com* (last visited December 6, 2019).

21. One of the ways Defendant markets its cosmetics is by sending automated text messages to consumers, advertising its promotions and pointing consumers to its website.

22. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(415) 200-XXXX.

23. On or about November 2, 2019, Plaintiff received the following text messages sent by or on behalf of Defendant:




24. Mirenesse is sending text messages to consumers to market their promotions and get consumers to visit Defendant's website to purchase its cosmetic products, just like the ones sent to Plaintiff.

25. When accessed from a cellular telephone, the website links embedded in the text (i.e. https://smsg.io/jNUlk) navigate to Defendant's webpage, which advertises and sells Mirenesse products.[2]

---

[2] https://www.mirenesse.com/collections/makeup-sale (last visited through embedded link https://smsg.io/jNUlk on November 24, 2019).

26. Further, on or about November 2, 2019, Plaintiff messaged "STOP" to Mirenesse in order to get Defendant to stop sending her automated text messages.

27. However, notwithstanding Plaintiff's request, Mirenesse continued to send automated text messages to Plaintiff's cellular telephone.

28. A true and correct copy of some of the text messages sent by Mirenesse and the message from Plaintiff wherein she attempted to opt-out from receiving those texts are reproduced below:




29. Federal Communications Commission ("FCC") rules "require[ ] callers give consumers a direct opt-out mechanism **such as ... a reply of 'STOP' for text messages**." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7996 ¶ 64 (July 10, 2015) (emphasis added). These rules additionally

state that "consumers must be able to respond to an unwanted call ... using either a reasonable oral method or a reasonable method in writing ... to prevent future calls." *Id.*; *see also In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830 1837 ¶ 18 (Feb. 15, 2012) (requiring telemarketers to implement an "automated, interactive opt-out" method for telemarketing robocalls).

30. Plaintiff revoked her consent to receive text messages from Defendant. Plaintiff did so by sending a reply of "STOP" just as the FCC rules recommend. As such, Plaintiff's revocation method was reasonable.

31. Despite this, Mirenesse sent Plaintiff at least two additional unsolicited text messages after the date of Plaintiff's revocation; one on November 9, 2019 and one on November 16, 2019.

32. Defendant's text messages were sent from SMS short code 592-24. On information and belief and investigation, ClickSend utilizes this short code.

33. "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising. Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."

34. ClickSend is a technology company headquartered in Perth, Australia that lets businesses send bulk SMS, email, fax & letters worldwide.[3]

35. ClickSend allows businesses to "[s]end thousands of text messages anywhere in the world with the ClickSend Web to SMS service."[4]

36. ClickSend states that with its "bulk SMS marketing service, your business is able to contact thousands of potential customers in Australia and around the world with special offerings and discount pricing, delivering your message right to their back pocket."[5]

---

[3] https://www.clicksend.com/us/company/ (last visited on November 24, 2019).

[4] https://www.clicksend.com/us/sms/ (last visited on November 24, 2019).

[5] https://www.clicksend.com/us/sms/bulk-sms-marketing/ (November 24, 2019).

37. ClickSend's platform offers businesses the ability to send over two hundred bulk SMS marketing messages.[6]

38. The text messages Mirenesse sent to Plaintiff consisted of pre-written templates of impersonal text, and were identical to text messages Defendant sent to other consumers.

39. In addition, the content of the text messages were automatically generated, with no human involvement in the drafting or directing of the messages.

40. The language in the messages was automatically generated and inputted into pre- written text template without any actual human intervention in the drafting or sending of the messages; the same exact messages were sent to thousands of other consumers.

41. The telephone system Mirenesse used to send the messages constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

42. Upon information and belief, Mirenesse stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time.

43. Upon information and belief, no human directed any single text message to Plaintiff's number.

44. In addition, upon information and belief the hardware and software combination utilized by Mirenesse has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

45. Mirenesse did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on her cellular telephone.

46. Plaintiff's time was wasted tending to Mirenesse's text messages, including those sent after she expressly asked Mirenesse to "STOP" sending the messages.

---

[6] *See* https://www.clicksend.com/us/pricing/us/#sms (last visited on November 24, 2019).

47. Receipt of Defendant's unauthorized messages caused Plaintiff to use limited data and text messaging capacity on her cellular telephone plan.

48. Receipt of Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

49. Defendant did not place the text messages for an emergency purpose.

**STANDING**

50. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

***The "Injury in Fact" Prong***

51. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

52. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent text messages to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

53. For an injury to be "particularized" means the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by texting her cellular telephone, and it did this with the use of an ATDS. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text messages, and even attempting to opt-out from receiving these messages. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

***The "Traceable to the Conduct of Defendant" Prong***

54. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

55. The above text messages were directly and explicitly linked to Defendant. Defendant's text messages identified the Defendant as the party that attempted to solicit business from Plaintiff and even provided a link to Defendant's website.

***The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong***

56. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

57. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

58. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

**CLASS ALLEGATIONS**

59. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification; and (5) who did not provide prior express written consent, or who revoked prior express written consent in the same manner as Plaintiff.

60. Excluded from the class are Defendant, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

61. Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

62. Numerosity: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

63. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

64. Ascertainability: The members of the class are ascertainable because the class is defined by reference to objective criteria.

65. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

66. Typicality: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to his cellular telephone from an ATDS. Thus his injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver a text message to Plaintiff's cellular telephone number.

67. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

68. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

69. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

70. Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

71. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

72. Plaintiff will vigorously pursue the claims of the members of the class.

73. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

74. Plaintiff's counsel will vigorously pursue this matter.

75. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

76. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

77. Predominance: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

78. Commonality: Issues of law and fact common to all members of the class, include but are not limited to the following:

a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. Defendants' use of an automatic telephone dialing system as defined by the TCPA;

c. Defendants' violations of the TCPA; and

d. The availability of statutory penalties.

79. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.
- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.
- Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

80. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

//

//

**COUNT I**

**Violations of the Telephone Consumer Protection Act**

**47 U.S.C. § 227(b)(1)(A)(iii)**

**(On behalf of Plaintiff and the TCPA Class)**

81. Plaintiff incorporates herein all preceding factual allegations.

82. Defendant and/or its agents placed unsolicited text messages to Plaintiff and the other members of the TCPA Class using an ATDS.

83. Defendant made these text messages *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

84. Defendant's conduct was negligent, or willful or knowing.

85. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

86. Plaintiff and members of the putative TCPA class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

87. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing calls to Plaintiff's cellular telephone number without prior express written consent.

88. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action;

B. Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

C. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

D. Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

E. Enjoining Defendant from continuing its violative behavior, including continuing to place text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

F. Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B);

G. Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3);

H. Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Federal Rule of Civil Procedure 23;

I. Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

J. Awarding such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

89. Plaintiff demands a trial by jury of any and all triable issues.

**KAZEROUNI LAW GROUP, APC**

Dated: December 12, 2019

By: *s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
ak@kazlg.com
*Counsel for Plaintiff and the Putative Class*